With that we'll begin with Mr. Howes on behalf of Shane Faithful. Thank you Judge Haynes and may it please the court. I am Eben Howes and I'm here on behalf of Mr. Faithful. I will be addressing the sufficiency argument that appears as issue one in both appellant's briefs and Mr. Zimmerman is here to address and we'll be discussing the second issue related to improper juror influence. And your honors our sufficiency argument comes down to in this case. Mr. Howes before you start on your merits there's a serious question about the standard review for your sufficiency of the evidence challenge because after the government rested its case in chief and you move for judgment of acquittal when I say you I know your client had different counsel. Then Craig put on evidence including Craig testifying and your client put in some emails as I understand it. No follow-up required motion for judgment of acquittal was made then nor was any made after the verdict was rendered. So it may well be that that you're dealing with the plain error standard of review for failure to properly move for judgment of acquittal which is basically manifest miscarriage of justice. Judge Barstow I don't think that we did fail to preserve this error here. The the crux of the distinction between the the part of the record that you're accurately describing and our claim here is that that is involving a motion for judgment of acquittal under rule 29a which has to be made during trial and then of course as you correctly say it has to be re-urged after the defendant goes ahead and opens up a case. What our what we what we did in this case is under rule 29c is make a motion for judgment of acquittal post verdict and the plain text of that rule contemplates that a defendant who never raises a motion for judgment of acquittal at trial at all can within 14 days of the verdict first move for motion for judgment of acquittal. That's subject to debate but when you did that you called it a motion for new trial not a motion for judgment of acquittal. That's true Judge Barstow. But there's several cases for a new trial has a very heavy burden as you well know. That's true there are different burdens but there there is precedent that we cited um both in this circuit and persuasive from the seventh circuit that recognizes that even if a defendant files a motion for new trial if the substance of that motion which I would maybe was not the most eloquent in in the motion in this case preserves a general challenge of sufficiency of the evidence then that is a that preserves the de novo standard of review and so I think there's there's no basis in the record uh in this particular record to think that either the government or Judge Hittner did not understand the defendants as meaning what they say when they said we are challenging the sufficiency of the evidence we think there's insufficient evidence for all elements on all accounts and then of course they raised three specific arguments as to um why there should be a new trial and the judge denied those and we haven't raised um the denial of those uh claims on appeal so we we do think that we've preserved this and I would point you to your 2002 en banc case in Herrera this court recognized that are emphasized twice both in the text and in the only footnote in the opinion that the defendant in that case had not raised a post-verdict motion for judgment of acquittal and that's the difference here is we have raised a motion uh for judgment of acquittal and I'm I'm not worth the motion for new trial that's what it's style I understand Judge Barksdale and I understand that that is not the preferred way to I would certainly not counsel somebody to do that if they're trying to be entirely um accurate but there is precedent recognizing that we will give defendants the benefit of the doubt if what they're saying it amounts to both emotion for new trial and a sufficiency challenge maybe the benefit of the doubt on what the oral argument no and in just the benefit of the doubt that the defendants have done what they said they that they've argued that the evidence was not sufficient as to all elements of all counts and so that that preserves a sufficiency claim that's made um uh for plenary review in the court of appeals and so uh we do think that this is a preserved claim and our claim comes down to three things text precedent and a simple proposition that appellate courts review judgments and in a criminal trial that means the jury's actual verdict not allegations the indict in the indictment that were purposely withdrawn from the jury's consideration so I'll start with the text and precedent the plain text of the controlled substances act draws a sharp distinction between unlawfully dispensing drugs and unlawfully distributing drugs and uh the dispensing applies to only to registered practitioners and it specifically includes the act of prescribing for non-medical purposes distribution on the other hand applies to everybody but it specifically excludes any type of delivery that qualifies as a dispensation but how about the distinction that the defense would be if I'm the doctor and I know that my patient a doesn't really need this for a legitimate purpose but just is addicted to um oxycodone or something like that and I'm prescribing it to to further his addiction that might be a dispense but if I know that patient a and even though I use the medicine going to take it down the street to the park and sell it to the people out in the park that's a distribution why isn't that distinction the appropriate way to look at this case well Judge Haynes my first order response obviously has to be that that claims the government's uh novel textual argument here and it is foreclosed by this court's decision in lee um it's 1973 precedential decision that looked at the definition here and decided that prescribing falls within the dispensing bucket and that means that it's not an act of distribution but to even if this court was to um I suppose once I this panel really is bound by that decision but assuming that it wasn't the reason the government's argument doesn't hold very much water is that it overlooks the fact that we're talking about the definition of conduct but it it depends on the mens rea that doesn't appear anywhere in the statute so it's a brings in this understanding of mens rea that just doesn't appear and you also have to remember that these definitions are defining not only unlawful conduct but but the conduct doctors are authorized to do and anybody is authorized to do and so it makes sense that congress would uh make talk about the things that doctors are registered separately to do for dispensing in terms of prescribing but the dispensing prescribing point to me uh the distinction you're making with a doctor is uh so if if patient a just had surgery and it's in horrible pain and the doctor prescribes pain medicine even if some other doctor would have done something different centered therapy or something like that even if it was debatable that is medically sound and therefore you can't prosecute that doctor for doing that so the dispensing you have to add that layer that there's no medical purpose to it because otherwise a simple debate among doctors over the the propriety of painkillers for pain uh would put somebody in prison but once you get past patient a and you're just talking about the people in the park why isn't the doctor also liable for that under distribution well your honor the the the answer is it depends on what conduct the government is actually trying to prosecute in this case at every stage of both trials it was very clear that the evidence and the argument that the government made was geared towards arguing that dr craig was guilty the moment she wrote prescriptions and so these definitions track that they are they are looking at what act is actually occurring and so when the act is a prescription that act the act tells the csa tells us is is a dispensation now if what the government is attempting to prosecute is a doctor who is willfully and intentionally writing prescriptions and then intending to also be involved in the later diversion of those drugs maybe because they're getting kickbacks or whatever other reason then that would be a situation where you're talking about isn't that what we have here that's not what we have here arguably it arguably it is what we could speculate is here but it is not something that the government put on sufficient evidence to support that again it is very clear when you read through this record at both trials that the government's argument was it is the act of prescribing that is illegal and that is why these defendants are guilty and i i do just so that way i can get to it on rebuttal want to make crystallize very quickly our point on the verdict issue the bottom line is that the judgment that's here for this court to review is the jury's verdict announcement or an open court and that verdict was limited to the crime of unlawful distribution and so it is not appropriate for an appellate court to look at the evidence in the record and say well we think that there's enough evidence for the crime of dispensation and then change the jury's verdict which did rest solely on distribution okay thank you mr zimmerman now we'll unmute you wait wait wait you have to be unmuted that little red microphone in the bottom left tells you if you're muted if it's got a little x through it a little line through it that means you're muted so we're working on it uh pam can you there we go now you're unmuted all right may it please the court uh the trial judge in this case should have kept the juror in the 14 member jury pool or declared a mistrial instead he dismissed her our position is he had no authority to do that so the court should reverse and order a new trial this morning we have two issues we want to discuss under uh our error number two one is a batching issue one is a batch uh we believe that it should result in in in a new trial reversal in a new trial discussing would we be making new law to apply that then after the jury after who dyer is over and the jury is seated in the in the jury pool we would if that was the case but let me make that point first and i was going to make it later but i'll make it now since you asked to judge it is critical to our our position that the court recognized that this particular trial judge's procedure the jury was not selected at the time that this event occurred the one we're challenging it began at voir dire and in his court it ends when the jury goes retires goes back to deliberate after he takes the 14 people who survived challenges for cause puts their names in a little container and then the case manager pulls out two and those 214 serve as alternates that had not happened yet so we did not have a selected jury yet at this point so we really are still in the jury selection phase that's important because obviously what you just asked first question we asked ourselves when we started reading this i'm convinced and i think you should be as well i think how bad things can apply to putting the names in the hat i can see how bastion would apply to that but once the names are in the hat pulling them out i don't i guess by that time i'm trying to understand what you're saying on that you're saying that because of the judge's hat technique the bastion challenge is good until the 12 are finally seated in the deliberation room that is correct your honor that is our position because obviously if something happens between the time of wadir and the time they go back and and uh and start considering the case something untoward happens then that is a jury selection issue and that's why we have batson we also have and we'll discuss when i finish with your batson argument to understand it let's assume argument of batson applies is that the um united states knowingly sent this agent to the elevator to have this conversation and get rid of this juror because she was african-american that's your argument i don't know that we we would take the position that they intentionally did that he intentionally did that that's our position the agent the conduct misconduct was by the agent wanted to get rid of someone who was african-american that's your position and that's underlying bastion argument we we we believe that he intentionally saw her he waited for her everybody else was gone she came out of the restroom she saw somebody out in the blue shirt get up and follow her out and then jump into the elevator right before it closed and as she said he leaned up against her and started talking about the case then when she said that she was able to be alert and she didn't think that he that that he she understood what her duty was she gets out the elevator he gets out of the elevator and follows her out of the courthouse i mean you understand that isn't just about excluding a person of a particular race from the jury it's about doing so for racial reasons to exclude someone because of their race not they happen to be able to because if someone says i can't be fair and you exclude them their race is not the reason you excluded them because it couldn't be fair okay so that's my point getting back to this your argument is that agent was seeking to exclude her because of her race either that or convince her that she should not follow this preconception that led to batson in the first place that minority jurors would vote for a not guilty verdict if one of members of their uh particular protected class was on trial in this case we had two two defendants dr craig and and uh mr faithful are both african-americans the juror was african-american and the agent was african-american that's why i was having a little i'm not you know okay so you're saying the african-american agent wanted an african-american juror to be taken off the jury because she's african-american that's your position i'm just trying to either that and we don't know because we can't read his mind but either that or he wanted to make friends with her so it would neutralize the possibility that she would vote for an acquittal and would vote with the government because she got along with their case with their agent who was a 14-year dea agent mr zimmerman how did you preserve this issue at trial when i say you i know you want the lawyer but you're representing the same person how was how was this preserved for dr craig at trial by the motion made by a lawyer for mr faithful for a mistrial uh based on uh the discovery of the misconduct by the dea agent and how did the motion describe the baton issue assuming you can you can latch on to the motion made by for mr faithful i don't know that it was also made for dr craig well judge did not make an objection as i understand it that's true your but uh in the record there is an order signed by judge hitler that said that motions made by one defendant would apply to the other defendant and that was accepted by the court so i think that's why we say that that the mistrial motion would also apply to both appellants and how did the mistrial motion state the baton issue that's what it did is and and i think that that's correct is that this activity and if she were struck uh that it would change the composition of the ultimate jury because at that point when this happened we didn't know if there'd be one african-american juror seated two african-american uh jurors seated or zero it all depended on whose name got pulled out of the but what it did do is it eliminated 50 percent of the possibility that there would be a member of the of the appellant's race sitting in a jury and we know that someone is not entitled necessarily to a certain specific percentage of of the jury being a member of their race but anytime that race comes into the to a jury selection issue we believe that the case law says that that's a structural error and prejudice doesn't have to be proven and so we think that that was done the fact that they're all everybody involved in this incident here is of the same race it's a minority race and remember when batson was one of the purposes of batson originally was to correct the then existing perception that prosecutors throughout the country state federal and military have to show more than simply the exclusion of a person of a certain race because otherwise every time a lawyer excluded someone of a particular race they would be in they would be charged with that and that's not enough you can have other reasons so this guy can just be making a conversation with someone on the elevator maybe he thought she's a nice lady i'm not saying it was appropriate what he did but charging it as a racial point you're making that assumption solely because of her race you're making the assumption that he was trying to exclude her for her race judge under batson there has to be a prima facie case of racial discrimination and what we but it says that that's a very low standard it's an inference all you have to prove is an inference i don't know any other way you could do it and say that this this black agent goes and particularly singles out this black potential juror and starts talking about the case to her in the elevator when it's just the two of them and then when she tries to tell him to go on she looks starts looking at her purse when she gets out and she goes out the court as he follows her out there that's a that's a different version of this story and so the judge can decide what he thinks is the real story so your version is trying to make him you know stalking her to try to get her to either be excluded or to rule against a person of african-american race um the judge heard the agent's viewpoint and looked at it a different way well judge you know what you point that that's really a good point and we wondered why the government when they were trying to show that was a race neutral issue it although they were never asked to give a race neutral reason they challenged they challenged that juror by the way the government initially challenged that that juror the the reason that uh we don't know what his uh motive was is because the government didn't ask him in this mini hearing that they had why did you go into the elevator with her why did you start talking to her about the trial why did you ask her if she was alert because you do her job as a he didn't start talking to her about the trial he said it's been a long day something to that effect you're really piling speculation on speculation that's in a way outrageous well if it please the court what the what the transcript shows is that they start talking about whether the trial was boring and how long it was and she makes she interjects she says well she's been able to stay alert and she's uh you know she's paying attention and that kind of thing uh so i i it's an inference that we there's no burden to prove by even a preponderance of the evidence that there's a racial overtone uh under bats and i think that the that the judge's inquiry obviously the judge thought that uh he this this confrontation if you will or this is this conversation disqualified her because he excused her over the objections of both sides so that you know because the government eventually when she testified that she was 100 sure that she could serve as a juror when the judge asked her that um you know the defense didn't want her on on the jury originally and the and the prosecution case for saying a judge can be found responsible for a era it's the judge that excused her they didn't want her excused so what's your best case so that's actual scenario well the procedure that set out in the batson case itself you're honest well batson's the best case for that it set out a procedure and didn't follow it okay thank you all right okay thank you mr zimmerman your time is up so we will now you reserve time for rebuttal both um counsel for the uh defendants and the appellate and pass so we will now hear from mr misler for the united states thank you very much your honor good morning i hope you can all hear me okay uh may it please the court scott misler i want to ask you right off the bat about this uh sufficiency the evidence argument i note also that one of the defendants adopted the reply brief of the other defendant i'm not sure you can do that on the sufficiency challenge but we'll hash all that out uh do you agree that that uh rule 29 c trumps all the other requirements under rule 29 that our court has you know i don't know the answer to that your honor offhand i think as as the court is aware beyond the rule 29 c issue we had raised the possibility that plain error applies for a different reason one in addition to the one your honor mentioned uh i've always understood that the defense after having raised a rule 29 argument the close of the government's case had to renew uh had to renew the rule 29 motion either at the close of all evidence the defense puts on a case or in a post-verdict rule 29 mr house has identified a couple footnotes in some older cases of this court and one out-of-circuit case in the seventh circuit but i guess i would note that in both of those cases in both of this court's cases he cited none of them discussed the principle we mentioned which is a fair notice to the government in the district court and the seventh circuit case found that the rule 33 motion for a new trial was effective in preserving the defense claim precisely because it had put the government and the court on notice of what the defendant was arguing and our main our main submission on plain error review here that didn't happen uh we've cited specific portions of the record where the defendants orally moved for motion uh judgment of acquittal on specific grounds at the close of the government's case in their rule 33 motion they did have a statement that said something to the effect of the government has failed to prove each and every element of every count beyond reasonable doubt but that was not a general statement saying they've proved none of those they immediately followed that the very next statement of saying that they incorporated by reference their earlier arguments so we think judge barks that even if the older cases and the footnotes that mr house has cited would generally be sufficient in an instance where the defendant raises specific arguments at the specific counts reincorporates those by reference later on and then totally changes the focus of their sufficiency argument on appeal that's plain error and that's in like the delgado case that went in bank in this court that really explicated the miscarriage of justice standard that your honor mentioned that was an instance where the defendant had challenged a conspiracy uh conviction on not lack of knowledge grounds in the district court and then changed to lack of conspiratorial agreement um in line with the panel decision in that case so that for that i'm sorry you know that both sides put on evidence after the government's case in chief but failed to move the rule 29 judgment of acquittal again had they done so uh that would have alerted the government to what the defendants perceived as factual issues and the government could have put on rebuttal evidence to that effect had they so moved i agree with that your honor and that's actually very much in line with something i wanted to mention to the court before i leave the standard review issue which is that um sometimes plain error can feel kind of arid and technical but when justice scalia explicated the reasons we have that rule and the contemporaneous objection requirement in the pocket case cited in our brief one reason he pointed out was that it alerts the judge to an issue in the case that can avoid a possible error that can avoid the introduction of a possible error in the first place and here if the defendants had intimated in any way that dispense versus distribute was a major issue for them and they perceived the problem under circuit precedent it's possible judge hittner would have said you know what we're going to track the indictment says distribute and dispense that's charged i'm wondering is this really more of a rage jury charge objection that the jury charge doesn't mirror the indictment rather than a sufficiency of the evidence right and that and that your honor is i regret that we didn't bring the to the court's attention but that is kind of the flavor of the gonzalez case from the seventh circuit and the um the inman case from the eighth circuit cited in our rule 28 j letter last week which mr house uh responded quite promptly i should say um in a gonzalez case that was a situation back in the 90s the court's uh encounter with with relative frequency after a major supreme court decision that changed the proof requirements under a frequently prosecuted firearm statute the court saw a lot of these cases in the seventh circuit said yes it is phrased as sufficiency but it has the flavor of a jury instruction error and so when it ends up remanding reversing and remanding for retrial in that case it said retrial was permissible precisely because although framed as sufficiency it really sounded in like an instructional um trial error type claim minister house i assume will come back and say this is not an error it's not an instructional error because under the cases he has cited um the government can indict more broadly and then instruct on a narrower theory of the case and he would say for that reason they shouldn't raise this as an error but again if they thought that there was a dispositive difference between these two statutory terms and they had raised that at any point in the case until the moment the uh or judge hitler may have insisted upon one and we wouldn't be here at all why it's not in there i mean it doesn't make a lot of sense to me why you all would limit yourself even assuming arguendo you can prove the distribution why wouldn't you include them both it just it's illogical to me right well i think going forward now um just as mr house said he would advise uh defense lawyers not to do a certain thing in terms of preserving arguments i would probably advise prosecutors to track the statute and the indictment and to ensure that their uh jury charge aligns with the one the supreme court addressed in u.s versus more uh but i think here what happened your honor and again this is to address a point i think mr house has made about the government intentionally or purposefully foregoing this ground of conviction i think if you look and this is inferences right but if you look at what the government was doing it was citing to prosecutions in houston by judge hitler uh and i think those align with some of the instructions given in the evans case that later reached this court as well uh so i don't think it was a in any way an intentional waiver or a strategic move to forego our ability to rely on any particular statutory alternative and so um i want to jump back in just a moment to what we think that the but i do want to stay on this point for one more moment which is that i think this discussion i hope fleshes out why if the court has any concerns at all about our primary submissions in this case about what the state of circuit law is regarding distribution dispense you do have this uh argument available to you under the supreme court's misachio decision which is that if this uh that the sufficiency is measured against the offense the elements of the offense as charged in the that are erroneous and adding elements we have pulled a jury verdict that isn't there so i mean if we were misogynous involved in extra element here what they're saying is you prove dispense man you proved it great however you never asked about that and therefore uh you can't you can't come back you you missed it that seems different from saying well you didn't prove an element you didn't have to prove you do have to prove dispense or distribute right well i think the defense is asking though for is a special rule misogynous extra element so the government acquiesces in or itself proposes an erroneous jury instruction that adds an extra element or like in the inman case the government misdescribes a jury element so you have erroneous jury instruction in one case extra element in another they're saying well this is a special case and i would agree with them if that was if we are in a situation like the griffin versus u.s the supreme court case or the tiggy case in the third circuit cited by mr house and his reply breeze those are instances in which the judge made a determination as a matter of law that one of the statutory alternatives was insufficiently proven and took the issue away that's that's that's quite different from saying this is in the indictment the government's theory was exactly the same it just used the wrong word and i think that to me is is not a situation in which this court should deviate from the rule in misogyno which is i think worded pretty categorically and which is tethered to the purpose of of the sufficiency review which is just to make sure that a uh the evidence was not so weak that it never should have gone to the jury in the first place and one last point on this your honor which is that i don't think the defense disputes at the time the government rested its or the time that dr craig rested her case the evidence was sufficient at that point judge hittner had not finalized the instructions and at that point when he if he had ruled on a rule 29 motion he would have had to measure the sufficiency against the indictment and not the instructions and so it's it strains me to think that evidence was sufficient at all those points in the case and became insufficient because it's something that happened at the charge conference or the jury verdict again absent a judicial finding that the evidence is insufficient or some kind of strategic intentional on the record waiver by the government to turn to the merits quite quickly let's talk about the evidence so assuming arguendo that these differences between dispense and distribute do exist and we have to follow them then uh what about my hypothetical that you know you have a doctor who prescribes to patient a knowing patient a is going to abuse the drug rather than use it for legitimate purpose but that is a different concept from prescribing it to patient a who's going to take it down the street and sell it in the park is that a fair distinction or do you disagree with that i don't disagree with that i i that's actually i think pretty much the point that everyone was trying to make in the second argument in our brief i do want to make sure your honor that i'm clear though that we view that as kind of a backup argument we read this court's decision in harrison in 1981 as establishing actually a broader role for distribution we think that despite the interesting and uh first principle kind of textual arguments mr house has raised that harrison really establishes distribution it's appropriate in either of those cases that it can be used interchangeably with uh dispense in practitioner cases that was the holding of harrison where the doctor was charged only with distribution distributing unlawfully distributing drugs by means of prescription for outside the course of usual professional practice and with no legitimate medical purpose so we think that distribution is really interchangeable with dispense in practitioner cases under this court's case law but if the court felt the need to grapple with the text and say we don't think this is just decided then we think that the fiction your honor is has drawn is is probably a viable one and one that would suffice to preserve the convictions in this case that's what i was going to get to you next so assuming arguendo that we think that that congress doesn't just put words in there for fun and we need to give meaning to the words as best we can uh would this selling in the park versus abuse by him or herself be a distinction that will if we made that distinction you would prevail the government would prevail in this case i mean is there evidence in your view a somewhat friendly question what evidence would you point to to show that dr craig and mr faithful were expecting the the pill in the park or really dr craig the pill in the park uh yes your honor so i think this is as the conspiracy count um which which encompasses you know all of the conduct and there i think the strongest evidence is the testimony from um testimony from lauren phillips and from erica hayes who are former gulfston clinic employees about how the facilitator program worked about mr uh mr faithful's um efforts to uh promote that program and also the uh testimony from the former facilitator the former crew leader former drug dealer davis webster who's a cooperating informant for the government in this case paul fernandez another witness but i get to focus on one particular piece of evidence and conduct i would refer the court to the store credit program this was the piece this was the business card that the government introduced in which the um the clinic gave out essentially replacements and credits for uh uh patients that were excused by the clinic because they didn't have the right prescription history or because they disobeyed the no cell phone and no electronic device rules the clinic had when that happened the patients didn't get their money back the facilitators who had bought the prescriptions for the plaintiff instead got a credit that they could use to send in somebody else off the street to pick up those drugs for them and phillips and hayes testified that faithful or dr craig one of the two had to approve each of those store credits those store credits were reflected in the expense reports and notebooks that were introduced into evidence and i think that alone really showed that the defendants were fully aware of what was going on one last piece of evidence was the video uh agent graham took a video when she went in as an undercover agent and it showed the state of affairs in the um in the clinic uh what the government described as an underworld in his closing argument i would urge the court to watch the video it's government exhibit 503 and dr craig would have walked past that because she came in testimony was she came into the clinic hours after the first patient started lining up and pouring in she would have walked past that that was agent graham's testimony and i think the evidence was really overwhelming on that point that she was fully aware of what was going on at the clinic the in substance accounts i would acknowledge your honor that the court is applying what i'll call our backup rule our second argument that uh we have to show some kind of diversion to a third party there it's a little harder as to the individual agents but i would agree with with the um point defense made in reply brief that we didn't link them as much to the notebooks and the documentary evidence but but especially if we're on devoid of evidence review miscarriage of justice review here your honor uh we have testimony from erica hayes that 90 up to 99 of the clinic's patients at that point in time were linked to facilitators and then certain attributes and certain characteristics of the exams dr craig performed she didn't tell uh agent graham or davis webster when they went in there for their exams how to use the drugs and the prosecutor argued and i think this is at page uh 4312 roa 4312 the prosecutor argued in closing argument the jurors can infer from this the doctor did not expect any of these people to use the drugs they could draw other inferences inferences from it they could conclude that she was just a bad doctor this is just her mo as to all patients but they could certainly draw the inference the prosecutor urged which was that she didn't care and she didn't need to tell them how to use it but she did not think that they were actually going to use it she knew the pills were going to somebody else sort of like the 9-11 terrorist when they were learning to pilot planes didn't learn how to land them well um the kind of fear is egregious i'll leave it to the court to decide whether it's not that dr craig is a terrorist i'm saying that by not caring how the person is going to use them she's not expecting them to use it that's that's exactly right your honor i think that's that's the inference the prosecutor urged the jury to draw in in closing argument just like a pilot normally would want to know how to land the plane unless they're not planning to land it that was the only and did not need to suggest and i'm sorry if anybody took it that way i did not need to suggest dr craig is a terrorist yes your honor and i just i just do i want to just be clear about one point your honor and just to separate the arguments we feel confident in the the reading of the statute your honors articulated but we don't believe that the court has to reach it under harrison and the case law we've described in our brief which we do think draws a more general line between uh establishes a more general rule that distribution is available in um in illicit prescription cases so this would be something the court reaches only i think if it rejects that threshold reading of circuit precedent which we hope the court doesn't do and i would just point out in that regard that the 11th circuit which is bound by this court's uh pre-1982 case has understood harrison in the same way as allowing conviction until no cases in illicit prescription cases based on either distribution or dispensing i know mr house has some time left and he may cite to the asthma case in the 11th circuit as met post dates joseph and the issue in azmat was just whether doctors can ever be charged with dispensing not whether they must be and if this court is looking at this case through the lens of plain error and has to address whether this error is clear or obvious we don't think any court since 1975 has held that doctors must be charged with dispensing a dispensing only rule to our knowledge does not exist in any circuit okay so what about the dapson claim yes your honor so i'll turn to the jury instruction claim we cited to the court uh in the 20th january the infante case from the ninth circuit decided after the closed briefing and we think that supports our argument here that batson simply does not apply to a judge's striking of jurors that isn't to say that a defendant can't establish an equal protection violation if um the strike appears to be substantially motivated by a discriminatory intent but i don't think it's possible at all to read discriminatory intent and to judge hitner's action and excusing the juror and as far as the agent's conduct go i just don't know of any cases judge bark still asked in which in agents uh interactions with a juror have been deemed to violate batson they could of course uh create the kind of problem that that would uh i guess give rise to a claim for a mistrial which was also made here i can turn to that in a moment but as far as batson goes we don't think the three-step batson framework has much purchase or much role to play as i think judge berzon explained to the ninth circuit it doesn't make any sense how the judge asked whether he was asked acting with discriminatory intent at that time and to figure out whether his own reasons for acting were pretextual that's just kind of an impossible inquiry to impose on a court on the trial court itself which of course is your batson is obliged to make factual findings that are reviewed deferentially on appeal so we don't think that framework applies and as far as the general equal protection framework we think judge reasons were pretty clear uh he had before him a very unique situation where well they're not attributing um racism if you will to judge hittner they're saying that it was the agent's plan to do something with the juror based on race and i even taking that argument straight up i'm just not sure that solely showing that she is african-american the juror is enough to get past the prima facie because then everybody would get past prima facie on on batson challenges that's correct your honor and maybe this ties into the point about preservation um but if while the word batson was mentioned at trial no one asked for a kind of full-blown inquiry right uh the i think the parties tried to conduct the here the limited hearing uh in the way that this court described them was just to try to do it in the least disruptive manner possible this is the case that was active at the time judge hittner did uh call the agent and the juror to the stand he left questioning by defense counsel of the agent and they didn't suss out any kind of discriminatory motive i also do want to push back somewhat on the notion that the that it was clear the inferences can be drawn that the agent acted improperly i actually think if the court looks closely at the two accounts of the agent at the testimony of the agent and the juror their accounts line up quite well i mean it's it's i think there's very little daylight but it's never appropriate for somebody on one side or the other to talk to a juror while the case is pending in my opinion maybe short of a group short of emergency where the person falls down or something but but just in a normal circumstance i can't think of a basis and that's pretty well known to anybody involved so i can't agree with that but i don't think that's your full argument no i'm i'm trying to say your honor that i think if to draw an inference that the agent was shading his once once he committed once he undertook the act which i agree was unwise we've called it ill-advised negligent i don't think it's intentional conduct yes that's that's fine we can we can live with that as well but i was just saying that i don't think the agent actually if you look at his testimony i don't think you can infer that he was shading what he did in any way i think the accounts line up exactly and mr um mr zimmer made made the point earlier that there was this delay the juror said that she was fiddling around in her purse to try to avoid interacting further with the agent and that actually explains why he ended up walking a few feet behind her it would they were trying to draw some inference that the agent was actually following her but it makes sense that she dawdled in the elevator to avoid him and he went to get his gun but he only ended up a few feet behind her because she stayed behind they weren't walking at the same pace so i just think all the inferences that have been that are they're trying to draw aren't borne out by the record judge hittner who's familiar with the courthouse layout for example in a way that i am not and this court may be but i'm not uh i think was much more well positioned to know the effect of this the severity of it and in turning away from batson toward the remmer part of mr zimmerman's argument which i know he mentioned but didn't really get into uh we have discretion to excuse a juror as a lesser remedy and as a lesser less grave a step than mistrial when uh the one of the parties calls into question the jurors impartiality and the judge ascertains that the juror hasn't shared any information about this outside influence with the rest of the jury and it was before deliberations i think that's kind of important in that case about deliberations you did your honor we cited the jordan case in the 20ha letter as well to the court and we agree that that was critical to the outcome in jordan um and so we think that with pre-deliberations the judge ascertained that uh through the questioning of the juror that she not share the information with anyone we think that under under forest from the circuit and from the brown case out of circuit in the sixth circuit the judge's authority the wide broad discretion the courts are given in handling matters of outside influence extends as well to excusing a juror rather than declaring a mistrial i'm happy to address other questions the court has but if not we would ask that the judgments be affirmed it would be exception of the forfeiture issue that mr faithful is raised okay thank you very much i think we're back to mr how yes thank you judge haynes uh just a couple points on rebuttal um our interpretation of these uh definitions is not that a doctor can never distribute um the point of our submission is that you have to look at the conduct that the government is seeking to prosecute and so when that conduct involves things that fall squarely within the plain text of the definition of dispense then that is the end the corollary to that is that the plain text also defines the term distribute as anything that is other than dispensing that necessarily shows that prescribing is when when prescribing is the theory of prosecution that's the basis in harrison i cite the text at all it does not even set forth the text it simply distinguishes lee from the facts that were at issue in that case and so mr miser is right i am going to go to the 11th circuit's decision in azmat in 2015 because that is our strongest case outside of lee um the 11th circuit not only held that lee was binding in the 11th circuit as to the very interpretive point that issue here it also said that even if lee didn't bind us we would look at the plain text of the statute and conclude that this is what it means that lee got it right and so it would certainly be an odd circuit split for this court to say that a prior published fifth circuit decision doesn't bind us where the 11th circuit has said that same fifth circuit decision does bind well i don't think that it's a matter of doesn't bind us it's a matter of how harrison distinguishes it and we're bound by that distinction rather than anything the 11th circuit might have said to distinguish or not distinguish it well judge haynes i i if if the court can find where harrison makes the uh the nuanced distinction that the government is referencing then i would um lay down to that but i can tell you for a fact that it is not in that that opinion the opinion addresses this point on uh in one paragraph in one footnote and it just does not deal with the text in any way and the conduct there was a doctor who was writing prescriptions to fake or fake patients he was making up names and uh then other people were going and filling those prescriptions so at the very least is this a case about fake patients they're not fake in the sense that they don't exist but they're fake in the sense that they're not really patient no it's not judge haynes this is a case where there were people who came to the i mean erica or one of the witnesses does say that but the other witness certainly said that it was between 50 uh 70 and 90 percent of the witnesses are the patients at this clinic but the the overall point is is that the conduct the government was prosecuting was prescribing here and i would urge the court to read the government's brief in asthma because that brief tracks my argument on the statutory point almost identically and i it certainly is telling that the government has in two separate cases in federal courts of appeals within five years argued that the exact same language in the exact same statute means two different things and i think that what's happening here is that the government is attempting to interpret the statute to fit the facts of this case and i understand that but the facts of this case are not going to govern in all other cases and the plain text of this statute is clearly making a distinction between these two um acts and judge haynes are also exactly right about the supreme court's misachio decision what was going on there was an additional element was added but at the bottom line is that the jury actually considered everything that was in the indictment that they that the verdict rested on in this case what is your answer to the question of whether this is really an attack on the jury charge more than it is on the evidence my answer is that this is a properly instructed jury we objected to this charge as being erroneous the the crime of unlawful distribution if there's not evidence of distribution then yes you can the jury shouldn't be asked to answer a question that there's no evidence to support that's a pretty fundamental principle well sure but that's not the defendant's decision i mean if the government's failed to show fdic insured it's not the defendant's um duty to go ahead and point that out and and say hey you might want to make that you get a witness up there no but i mean you you say you can't submit this question because there's no evidence of it well so i think that the government the government is misreading that portion of justice thomas's opinion he was describing the reviewing court's duty is to decide if the case should have been submitted to the jury the sufficiency review is not about whether at the moment the case was given to the jury it was appropriate to uh submit the case to the jury and i will if you'll permit me judge james just to make a quick fact to say that again it's not relevant it's not relevant whether no i'm saying evidence at the time the jury was charged of course it's relevant but what i'm saying is on appellate review it is what the appellate court is doing is determining whether or not the evidence was sufficient to go to the jury it is not necessarily about whether or not at the time the the fact that the evidence that the charge might not have been decided at the time isn't relevant to the appellate appellate review and i will note that in this case it's just factually incorrect this jury there was a first trial here and before the second trial the judge entered an order saying all of my rulings in the prior trial remain in effect and that includes the jury charge and so in this case it the government's the verdict of this jury is what controls and it should be the benchmark for this court's your time is up we'll appreciate it um it turns out we will like to give you extra time okay mr zimmerman you get to wrap up and let's let that meet you first wait wait gotta look at that little red microphone oh there you go okay go ahead your honor how much time do i have because i don't have five minutes to fix it to put it up there you go you have four minutes and 57 seconds right now in time what i'd like to do with the court's permission is discuss or very briefly three of the cases that were decided by the government in their in their argument starting with infante infante is not on point that was a case where a juror who was filipino extraction told the judge he couldn't be fair because the uh uh the defendant looked just like his uncle who was also a filipino in that case uh they your the juror was was uh dismissed because he couldn't be fair in our case in this case before the court today the uh juror swore under oath she was 100 sure she could be fair and yet she was dismissed by judge hitman the jordan case the issue there was a type of hearing required where the judge granted a new trial for outside influence and and the appellate court found that prejudice was clear because a courtroom security officer contacted a sitting juror and shifted the burden to the government to show the verdict was not influenced by outside conduct and the remedy was a mistrial lastly the forest case the forest case was a issue was a new trial if they found juror tampering trial court replaced a sitting juror with an alternate which is basically more similar to what we're doing here and any kind of the issue though this court as long ago as 1980 issued an opinion that says any contact with the juror is presumptively prejudicial i think you addressed that earlier judge haynes and i want to emphasize that that that was what what happened in the forest case and the burden was on the government to show there was no effect on the jury that didn't happen here in our case in that case forest was remanded so that we have that was the motivation i had no idea what judge hitman's motivation was i do recall he mentioned something about when batson was mentioned he said i'm very familiar with batson i've written articles on it that's in any event perhaps judge hitner we can infer was just trying to be extra safe even though both sides said don't dismiss her she said this is not going to influence my decision nonetheless a court security officer or whatever it was had contacted her and he thought that was just we don't need to do that we've got two tentative alternates and we've got 14 people in the box and so we can do this if the trial is ready to go into the jury deliberation stage you're just being cautious well but you have to determine what the effect of that erroneous ruling in our opinion is on the defendants uh what it allowed the government to do and when i say the government i'm talking about the dea 14-year veteran dea agent he is the government in this case he's a representative of government what he does reflects on the government and he's letting that that dea agent influence the composition of the jury it took out 50 of the potential black jurors that could have gone to that set sit on that jury and uh i i that's not what the way it's supposed to be it's supposed to be done and i know that and i can't remember it was just haynes or or your honor that uh was was asking us about basically what i interpreted the question is what's the burden of proof of showing that race was involved and i want to re-emphasize that the the burden on the defendant is not to show by a convincing evidence proof by promise of evidence but just to raise an inference that race is involved and i would point out that both the juror and dr craig are in two protected classes under batson gender and race they're of the same race and the same gender and we the dismissed had a constitutional right not to be kept from jury service based on an improper reason and we we believe that that is another reason why this court ought to reverse and uh and order a new trial and i don't know if i have any more time left or not a few seconds do you want to wrap up you have 30 seconds all right judge well here's here's bottom line these two uh african-american appellants did not get a fair trial when their own government representative of the prosecution contacts the juror a potential juror and succeeds in getting her singled out and targeted and removed from the jury that's going to sit on judgment of them because of misconduct by the government and we believe that the court should order and reverse the conviction and order a new trial if you don't grant a lot of acquittal thank you very much thank you very much we appreciate it um i will ask the courtroom deputy to i will say that the case is under submission and i will ask the courtroom deputy to excuse the attorneys from the chambers and i mean from the courtroom as well as we would ask that the public be excused thank you very much for your arguments thank you